State vs. Tolman.

No. 13,732.

STATE OF LOUISIANA VS. D. H. TOLMAN.

SYLLABUS.

1. In a case appealed to the Supreme Court only by reason of the legality of a tax having been in contestation, it has to assume that all issues other than the special one of the legality of the tax and all facts other than those upon which the ascertainment of such legality is dependent, have been correctly adjudged by the lower court.

2. Where the record before the Supreme Court is not in a condition such as to enable it to determine the special issue submitted to it as to the legality or illegality of the tax in contestation, it will dismiss the appeal.

3. A direct appeal to the Supreme Court upon the special issue of the legality of a tax does not cut the parties off from contesting in some other appellate court the other issues involved, if the case is otherwise appealable.

4. The constant daily repetition by a person of the same act, each act bringing with it a money return, is the "carrying on" by that person of a "business" in that particular line. A person who opens an office, advertises that he has money to lend on application, makes daily and hourly loans at interest, particularly for short periods, on so extensive a scale as to necessitate the employment of clerks, "carries on the business" of money lending, and is subject to a license, though the money loaned be his own.

5. Act No. 170 of 1898 subjects to license taxation all persons "carrying on a business" other than those specifically mentioned in the act, and graduates and fixes the license therefor; there was no necessity for each particular occupation to have been named.

A PPEAL from the Civil District Court, Parish of Orleans.— King, J.

*Hugh C. Cage,* for Plaintiff, Appellee.

*Henry M. Danneel,* for Defendant, Appellant.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. The defendant has appealed from a judgment condemning him to pay sixty dollars to the State of Louisiana for a license for the privilege of conducting the business of money lender during the year 1900, with two per cent. per month interest, from March 1st, 1900, and ten per cent. attorneys' fees on said amount, and interest and costs, and enjoining and restraining him' from carrying on said business until the said license, interest and attorneys' fees be paid.

The proceedings originated in a rule taken upon the defendant at the instance of the State tax collector to show cause why the judgment of the Civil District Court should not be rendered.

The rule was served, as appeared by the sheriff's return, by leaving a copy of the petition for the rule, the interrogatories thereto attached and order of court thereon at defendant's office in the Hennen building, in the hands of Mrs. Laura E. Young, his agent. The interrogatories referred to were questions asked of the defendant and attached to and accompanying the petition of the tax collector for the rule, as to whether or not he had not been conducting and carrying on business as set forth in the petition, and whether he was not then carrying on said business; whether the gross receipts stated in the petition to have been received by him exceeded the amount stated; whether he did not owe for a license as declared in the petition; whether he had paid for the same, and whether the allegations of that petition were not true.

The court ordered a copy of the interrogatories to be served on defendant; that he answer them, and, in default of his doing so, that they be taken for confessed.

At a later stage of the proceedings, on motion of the tax collector, defendant was ordered under a subpoena *duces tecum* to produce in court certain books declared to be in defendant's possession, for the purpose of being used in evidence on the trial of the rule.

A copy of this motion and the order therein were served by leaving a copy of the same at his office, in the Hennen building, in the hands of Mrs. Laura E. Young, his agent.

The defendant excepted to the jurisdiction of the court; he excepted that he had not been cited or summoned, denying that Mrs. Laura E. Young was his agent or authorized to receive service or have

service of any kind made on him through her; he excepted that he was a non-resident of Louisiana, a citizen of Illinois, having his domicil in Chicago, and could not be brought into court in manner and form as was attempted.

Attached to these exceptions was the affidavit of Mrs. Young, denying that she was the duly authorized agent and attorney in fact of the defendant, a resident of Illinois, and declaring she was without authority to receive or accept service of process.

These exceptions were overruled and defendant, under reservation of same, answered, pleading first the general issue.

He then specially denied that he was doing business in the City of New Orleans or the State of Louisiana within the purview of any statute requiring license to be paid to the State.

He averred there was no law authorizing the levying or directing the payment of license for lending a person's own money to other persons in the said City or State. That no license had been heretofore claimed from persons who lend money, though they are residents of the city and State. That defendant, not being a resident of the city and State, but a resident of another city and State, was not amenable to the laws of Louisiana, and the attempt made to subject him to the payment of any license was in conflict with his rights and privileges guaranteed to him under the laws and Constitution of the United States. After trial of the rule, judgment was rendered as stated. The decree was prefaced by the statement that the judgment was rendered "after hearing evidence and counsel" and that it was not rendered "considering the law and the evidence and for the reasons orally assigned."

The District Clerk certified that the record sent up "contained a true, exact and complete transcript of all the proceedings had, documents filed and evidence adduced on the trial of the cause."

In the brief filed on behalf of the appellant, he complains of the action of the court in overruling his exception of want of citation and his contention that he was not legally before the court, either upon the rule itself or the order to answer interrogatories or to produce books, and the action of the court directing the interrogatories and the allegations of the motion for a subpoena *duces tecum* to be taken for confessed.

On the merits it is urged that the defendant, a resident and citizen of Chicago, was engaged in lending *his own money* to persons in the

City of New Orleans; that he was not present personally in the City of New Orleans, but negotiated such loans as were made through an ordinary clerk, who attended to the placing of the money, the taking of notes therefor and such other clerical duties as appertained to the transactions.

That, even if he were present personally and similarly engaged, he could not be compelled to pay a license tax for investing his own money in any manner he might think proper; that the Legislature had not seen fit to impose a license tax on a person lending his own money

## OPINION.

This case comes before us on appeal based, as to the jurisdiction of the Supreme Court, upon that clause of the article of the Constitution of 1898 which conferred upon it jurisdiction in all cases in which the constitutionality or legality of any tax shall be in contestation, whatever may be the amount thereof, and declares that "in such cases the appeal on the law and the facts shall be directly from the court in which the case originated to the Supreme Court."

We have repeatedly held that upon such appeals the only issue before us for adjudication was the constitutionality or legality of the tax claimed, and the facts, we were called upon to consider were limited to those necessary to reach a determination of the special issue before the court. The amount involved in the present litigation is entirely too small in itself to justify an appeal from a judgment rendered upon it, disconnected from the fact that it is a claim for a tax which is contested as to its legality. Where the matter in dispute in the court below is the liability of the defendant upon an ordinary debt, an amount below our appellate jurisdiction, and exception filed by the defendant that he had not been legally cited or brought into court, either upon an original rule or any matters incidental or ancillary thereto, has been overruled, the correctness of that ruling cannot be reviewed by the Supreme Court on an appeal.

The mere fact that such an exception has been made and overruled in a case appealable to the Supreme Court by reason of the litigation being over a contested tax, does not make the ruling reviewable by it. So far as this court is concerned, it has to assume that all issues other than the special issue of the legality of the tax which is in contestation, and all facts other than those upon which the ascertainment of the legality or illegality of the tax is dependent, have been correctly

determined by the court below. An appeal to this court upon the special issue, the legality of a tax, does not cut the parties off from contesting in some other court than the Supreme Court the correctness of the rulings of the court below, if they are otherwise entitled to an appeal from the same.

The system adopted of requiring appeals taken from a judgment passing upon the legality of a tax to be taken as to that particular issue direct to the Supreme Court from the court in which the suit was instituted, instead of allowing them to be taken to the court having final appellate jurisdiction over the case at large (except as to the special issue) sometimes carries with it delays and expenses not contemplated by the convention. The splitting up of appeals and the sending of one branch of a case to one appellate court and another branch of a case to a different court may be attended by incongruous results, but we are powerless to control that matter.

The only evidence on behalf of the plaintiff which we find in the record is the subpoena *duces tecum* and the affidavit of the tax collector as to the materiality of the books and what was intended to be proved thereby, coupled with an admission by defendant's counsel to the effect that the books had not been produced in court.

If the court ever declared the interrogatories propounded to the defendant, or the allegations made in the application for a *duces tecum,* to be taken for confessed, the fact does not appear in the transcript. The only evidence attempted to be introduced by the defendant was to establish, through testimony of the tax collector, that he did not always exact a license from persons who advertised themselves as money lenders, by questioning him as to whether he had exacted a license from certain parties named. The court refused to allow the question to be answered on objection made that the matter sought to be established was irrelevant and could have no effect in deciding the questions as to the legality of the tax claimed.

It will be seen that we have been furnished with data by neither the plaintiff nor the defendant by which we can ascertain and determine whether the tax claimed of the defendant by the State is legal or not. The record does not inform us whether the lending of money by the defendant was under circumstances such as to make the lending constitute the carrying on of a business to that effect by the defendant.

The legal proposition announced by defendant, that so long as a party lends only *his own money* he cannot be charged for a license

as for carrying on the business of a money lender, is entirely too broad.

An occasional lending out by a person of his surplus means, by way of its investment, could not be properly called the carrying on of a business of lending money, but, if a person of means opens an office, advertises that he has money to lend on application, makes daily and hourly loans at interest, particularly for short periods, and does this in such a way, continuing on such an extensive scale as to necessitate the permanent employment of a clerk, no good reason can be assigned why he should not be held to be engaged in a business in so doing, or why that business should not be designated as the business of lending money. The constant daily repetition by the same person of the same kind of acts, each act bringing with it a money return, is certainly the carrying on by him of business in that particular line. Whether or not the transactions of defendant in lending money were of that character, we cannot say. The other legal proposition advanced by the defendant is that the General Assembly has never directed the levying of a license upon persons engaged in the business of lending money and that until it shall do so in express terms such a license cannot be claimed.

The license is claimed by the tax collector to be legally demanded under the 14th Section of Act No. 171 of 1898, an act entitled, "An act to levy, collect and enforce payment of an annual license tax upon all persons, associations of persons or business firms and corporations pursuing any trade, profession, vocation, calling or business, except those who are expressly excepted from such license tax by Article 229 of the Constitution, and prescribing the mode and method in which certain persons subject to license shall make report of their business."

The 14th section, after dividing the licenses for every individual or company carrying on the profession or business of agency for steamboats, draying, trucking, keeping carts, carriages, hacks or horses for hire, undertakers, owners or lessees of toll bridges and ferries, master builders, stevedores, bill posting, or tacking, contractors and mechanics who employ assistance, into thirteen classes and fixing a specified license for each class, *proceeds at its close* to declare that every individual or individuals carrying on the business or profession of physician, attorney at law, editor, dentist, oculist, photographer, jeweler, *and all other business not herein provided for*, shall be graded as above set forth, but the license shall be one-half of those established by this

section, and provided no license shall be issued hereunder for less than five dollars."

"The first class provides for cases where the gross annual receipts are twenty thousand dollars or more, for which the license is fixed at $120.00. The last or 13th class provides for cases where the gross annual receipts are less than seven hundred and fifty dollars, for which the license is fixed at five dollars."

The law above referred to subjects to license taxation every business or occupation falling under its terms, not expressly exempted by Article 229 of the Constitution. The business of "a money lender" is not mentioned expressly in any of the sections of the law, but it falls under that portion of the fourteenth section wherein it is declared that all business other than that specially mentioned therein, shall be graded under its classification, and the license fixed at one-half of those established by the section.

Tax collectors act ministerially in claiming a license against a person under this portion of the section; their acts are not final, but left open for contest when their correctness is called in question. The law is sufficiently definite in its terms (*id certum est, etc.*)

Defendant refers the court to the decision in State *ex rel.* Huson, Sheriff, vs. Bank of Mansfield, 48 Ann. 1029, in support of his claim that he is not subject to a license.

That decision has no application to the case at bar. In that case license was demanded upon a bank having a capital *less than fifty thousand dollars.*

The law, by its terms, had only fixed a license upon banks having a capital of fifty thousand dollars and upward, leaving those having a smaller capital not provided for. The court simply declared that neither tax collectors nor courts could carry the classification downward below the lowest classification fixed by the General Assembly. That the Legislature, under the Constitution, was not forced to levy a license tax, and so long as it did not exact licenses for occupations exempted especially by the article of the Constitution it had the constitutional right to fix the lowest limit it might think proper for the exaction of licenses upon any particular occupation or business. Article 985 of the Code of Practice is to the effect that the Supreme Court can only exercise its jurisdiction in so far as it shall have knowledge of the matters argued or contested below. While the parties to an action in the court of first instance are free to have let

the proceedings had, and testimony adduced be preserved or not, they do this at their own risk, should the case be an appealable one, and they have failed to protect and guard their interests to meet the contingency of an appeal. It is the duty of an appellant to place a record full and complete before us. In the case at bar we are satisfied, notwithstanding the clerk's certificate, that the transcript before us does not contain all the evidence adduced, nor all the proceedings had.

We are called on, on the one hand, to declare illegal the license exacted of the defendant in spite of the judgment of the District Court to the contrary, and on the other hand to affirm the legality of the license. With the lights before us we can do neither. As we are not in a position to render either of the two judgments which the special character of this case requires at our hands, we are of the opinion that the proper course is to dismiss the appeal. (State *ex rel.* Cotonio vs. Judge, 105 La. 765.)

For the reasons assigned, it is ordered, adjudged and decreed, that the appeal herein be and the same is hereby dismissed.